## LUNATI et al. v. PACIFIC HYDRAULIC EQUIPMENT, Inc.

No. 551.

District Court, W. D. Washington, S. D.
Nov. 22, 1935.

Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., and Battle, Hulbert, Helsell & Bettens, of Seattle, Wash., for plaintiffs.

Raymond D. Ogden and Ward Wm. Roney, both of Seattle, Wash., for defendant.

CUSHMAN, District Judge (after stating the facts as above).

Upon the showing made, the court will assume for present purposes the validity of these claims.

There remains therefore for determination the question of whether infringement has, to the necessary degree of certainty, been shown. The determination of this question depends upon the range of equivalents covered by the patent.

The elements of the combination of the Lunati patent were old, but it is the contention of plaintiffs, that by arrangement and form a new result was attained, briefly, a hydraulic lift with a single cylinder with means so formed and arranged upon the upper end of the rising piston that an

automobile could be raised and held, leaving free for servicing the under portion of the automobile.

On account of the conclusion reached, but one feature of the claims will be considered. This feature, as described in claim 2, is a "vehicle supporting means"; in claim 3, "a pair of spaced parallel rails arranged on opposite sides of said supporting member"; in claim 7, "spaced parallel rails secured to said support"; claim 8, "means for supporting a vehicle on the upper end of said piston."

In so far as the specifications of the patent appertain to this feature, they are as follows:

"I * * * have invented certain * * * Improvements * * * of which the following is a full, clear, and exact specification. * * *

"Figs. 3 and 4 are plan and side views respectively of the hinged member connected to the channel rails. * * *

"Detachably clamped to the upper part of the piston 5 is a two-part casting 9 constituting an attaching member for the vehicle support which consists of two channel rails 10. These channel rails are bolted to the attaching member 9. They extend laterally from the hollow piston on opposite sides thereof and are spaced apart a suitable width to receive the wheels of the ordinary motor vehicle. These rails are secured only to the head carried by the centrally mounted piston and they extend freely from said central support without other means of bracing or supporting means beneath the same throughout their full extent so as to leave a free, unobstructed space beneath the vehicle supporting rails whereby ready access is afforded to the vehicle. By this arrangement, the vehicle is adapted to be supported in equipoise by the parts of the supporting members extending freely from the center and by means of the central, single piston only. At each end of these rails there is provided a hinged member 11 which may be lowered to provide an inclined track to facilitate the rolling of the vehicle upon the rails and which may be supported in raised position to constitute a stop to prevent the vehicle from rolling from the rails after it has been placed thereon. Pawls 12 serve to hold the hinged members in upright position. The rails on their under sides are preferably provided with blocks 13 to constitute stops to space the rails from the ground when the vehicle is lowered so as to prevent crushing of the hands of the operator in such operation. * * *

"Having thus described my invention, what I claim is. * * *"

In the drawings no rail is shown other than a channel rail and, as will be noted, none other is described or mentioned in the specifications.

The machine of the patent is one of the type known as the "roll-on" type; the wheels of the automobile to be serviced being run into the channels of the rails which are at rest upon the ground and along said channels until the tires of the four wheels upon their tread all rest in the channel of the two parallel channel rails. A member is provided at each end of each rail to prevent the wheels of the automobile from rolling along and out of the channels and off of the rails.

Defendant's device has spaced, plain, unchanneled rails which are less widely separated than those shown in the patent. The rails of defendant's device are not designed to contact the wheels of the automobile, but, after the automobile has been run into position and stopped where the body and axletrees of the automobile are above and out of contact with them, these rails or bars are raised until they come in contact with the axletrees, one rail inside the hubs of the wheels upon one side of the automobile and the other rail so in contact upon the axletrees upon the other side. The device of the defendant is what is known as the "free-wheel" type.

Is the rail of the defendant's device the rail of the patent, or its equivalent?

In so far as the element by means of which—by direct contact—the automobile is lifted, without more, it may be conceded that the rail or bar of the defendant is equivalent to the channel rail of the patent, but it is necessary, while being and after the automobile has been raised, to hold it in position. The sides of the channel rails of the patent prevent the front wheels of the automobile from turning to right or left and rolling from the rails; the "hinged member" provided at the ends of the channel rails described in the quoted specifications prevent the automobile "from rolling from the rails."

The rails or bars of defendant's device are of simpler construction. The automobile, while being and when raised, is, without more, firmly positioned and held upon

424

the rails or bars by weight and friction. No chocks or stops are needed. Further, defendant's device leaves the wheels and associated parts of the automobile free for servicing at the same time that the under portions of the automobile are being serviced or repaired.

It may be·that in a basic patent such changes in form, application and result, with such advantages thereby secured, would be considered improvements not avoiding infringement. Upon consideration of such of the previous art as has been disclosed, it appears that the Lunati patent, if valid, is one of low degree. The court does not understand that plaintiffs contend otherwise. Upon the hearing their attorney stated: "He (attorney for defendant) also said that the Lunati patent was a patent of low degree, and for the purpose of this proceeding I think I can, to some extent, agree with that."

The evidence produced shows the range of equivalents, in the respect noted, is so limited that infringement is not shown to that degree of certainty required to warrant a preliminary injunction.

A preliminary injunction will be denied.

The clerk is directed to notify the attorneys for the parties of the filing of this decision.